IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLARISSA HASAN, *on behalf of* T.H., | ) | CASE NO. 1:17 CV 370 |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Clarissa Hasan, on behalf of T.H., under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying T.H.'s application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 12. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Hasan who was 8 years old at the time of the administrative hearing,[11] was in the 3rd grade and enrolled at Michael R. White elementary school.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Hasan had the following severe impairments: attention deficit hyperactivity disorder (ADHD), a mood disorder, and a conduct disorder (20 CFR 416.924(c)).[13]

**B.    Issues on judicial review**

Hasan asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hasan presents the following issue for judicial review:

---

[6] ECF # 13.

[7] ECF # 22 (Commissioner's brief); ECF # 19 (Hasan's brief).

[8] ECF # 22-1 (Commissioner's charts); ECF # 19-1 (Hasan's charts).

[9] ECF # 18 (Hasan's fact sheet).

[10] ECF # 25.

[11] ECF # 10, Transcript ("Tr.") at 120.

[12] *Id*. at 144.

[13] *Id*. at 14.

- Whether the ALJ erred with regard to applying the child domain regulations regarding plaintiff's limitations in attending and completing tasks and interacting and relating with others.[14]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded.

## Analysis

This children's SSI case presents the single issue of whether the ALJ erred by finding less than marked limitation in the functional domain of interacting and relating to others. Resolution of this question centers on the weight assigned to two sources - Thomas Eppright, M.D. and Pauline Congeni, MSW, LSW.

Dr. Eppright, who treated T.H. at Beech Brook, opined that T.H. has marked limitations in the domain of interacting with others.[15] His opinion was assigned little weight.[16] The ALJ stated that Dr. Eppright's statement was "not determinative" because "these extreme limitations have not been supported by objective evidence."[17] To that point of objective evidence, the ALJ states that "no school or medical records have been

---

[14] ECF # 19 at 1.

[15] Tr. at 18.

[16] *Id.*

[17] *Id.*

submitted," and further states that "Dr, Eppright's assessment is also in contrast to one completed by [T.H.'s] therapist."[18]

Congeni, who is identified as T.H.'s therapist, also concluded that T.H. has marked limitations in the domain of interacting with others.[19] The ALJ assigned that opinion "not significant weight."[20] Here, although the ALJ cites to specific reasons for the lesser weight that relate to other domains, he states that Congeni's functional opinion is deficient "[f]or similar reasons" to those given concerning the opinion of Dr. Eppright.[21]

In discussing this particular domain in the opinion, the ALJ specifically took note of the following:

(1) That although T.H. is largely intelligible when speaking, he also stutters;

(2) the record shows he "has anger issues, argues, fights and behaves in uncooperative, disrespectful, aggressive and defiant ways;"

(3) his mother reports that he has "random" temper tantrums, has been suspended from school multiple times, and fights with his siblings'

(4) at the same time, T.H. was "also noted to be helpful, and kind to others, including to family members, when he wants;" and

(5) his mother also "reported that [T.H's] impairment did not affect his behavior with other people."[22]

---

[18] *Id*.

[19] *Id*.

[20] *Id*. at 18-19.

[21] *Id*. at 18.

[22] *Id*. at 22.

The ALJ also observed that "Beechbrook treatment records document [T.H's] poor peer relations and attention seeking behavior," while also describing T.H. as "socially awkward, aggressive, and having difficulty making friends."[23] The ALJ then further noted that Beechbrook records also show that T.H. "moved at least twelve times in a three-year period."[24]

At this point, the ALJ discussed the April 2014 opinion of Dr. Thomas House, Ph.D., a consultative examining psychologist, noting first that Dr. House found T.H. to be "capable of being cooperative and pleasant in a one-to-one interaction, with the ability to talk about topics of interest, and to participate in a conversation initiated by others."[25] The ALJ further cited Dr. House's opinion for observing that T.H. had the ability to listen to others and to take direction, and that T.H. reported that he had a "best friend and interacted well with his 11 year old sister."[26] The ALJ also reported in the opinion that Dr. House "speculated" that over-stimulation may be why T.H. may have more difficulties in group settings, and stated that Dr. House noted T.H.'s "occasional[]" frustration, which manifested itself in behaviors such as "throwing things, screaming, and engaging in some self-injury, with defiance, and physical and verbal aggression."[27] The ALJ concluded by personally noting that while T.H.'s

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

temper tantrums were reported by his mother, "they are not well supported by the objective evidence."[28]

As to the ALJ's personal note about unsupported evidence of tantrums, it is noted that Dr. House himself noted in his consultative report that T.H.'s mother reported that he had temper tantrums about six times per week, and that such tantrums consisted of kicking, screaming, hitting the wall, and punching/slapping himself, and that these tantrums lasted about 20 minutes.[29] Dr. House more directly states that "T.H. does have temper outbursts" and "can have some explosive outbursts."[30] Dr. House also noted that T.H. was suspended four times from school in the current year, and was the subject of "repeated" phone calls home to his mother, all for fighting and being disruptive.[31]

Moreover, the treatment notes of therapist Congeni over a two year period are replete with notations about T.H. manifesting behavioral problems with anger,[32] impulsive

---

[28] *Id*.

[29] *Id*. at 165-66.

[30] *Id*. at 170.

[31] *Id*.

[32] *Id*. at 175-76, 188-90, 219-20.

behavior,[33] disruptiveness,[34] fighting,[35] impaired thinking due to anger,[36] and problems with complying with adult authority.[37]

While not precisely using the word "tantrum," this extensive list of episodes documents numerous instances of when T.H. was found to be acting in ways fully consistent with a "tantrum." Taken together with his mother's reporting[38] and Dr. House's direct statements in his report, the record is full of evidence directly contradicting the ALJ's comment that T.H's tantrums were solely reported by his mother and have no objective foundation in the record.

In addition to this instance of highly selective, and prejudicial, view of the evidence by the ALJ, there is the equally important matter of the ALJ preferring the opinions of one-time state agency consultants and/or reviewers to the opinions of sources with a significant record of dealing with T.H. on a regular basis over a period of years.

---

[33] *Id*. at 206, 305.

[34] *Id*. at 197.

[35] *Id*. at 206.

[36] *Id*. at 188-90, 191.

[37] *Id*. at 176, 188-90, 197, 206, 219-20.

[38] It is noted that T.H.'s mother also reported to Dr. House that T.H. was involved in "frequent" tantrums in stores, often occurring in connection with theft. *Id*. at 166-67. One would assume these retailers, had they been called as witnesses, could have provided the ALJ with additional testimony that T.H.'s tantrums, their frequency and severity were not figments of his mother's overwrought imagination.

While I am well aware that a school therapist such as Congeni may not be a member of a medical treatment team in a way that is directly analogous to the matter addressed in *Pater*,[39] I am also keenly aware that Congeni's notes and treatment records are the most extensive and over the longest term as are available here. I am also well aware that while Congeni's notes may not be "school records" as that term is commonly understood, Beech Brook is not a standard academic environment. While the ALJ may have been technically correct to find that there were no were "no school or medical records" submitted to support the limitations ascribed to T.H.,[40] it frankly is difficult to view the on-going records kept by a therapist at a facility specifically dealing with developmental and behavioral problems of children as anything but equivalent to a school record of T.H.'s behavior and development.

In this regard, it is important to note that everything which the Commissioner cites as reasons for generally preferring the opinions of a traditional "treating source" over those with a more transient relationship with the patient - long-term contact, longitudinal record keeping, and expertise - is more present with therapist Congeni than with the one-time examination by Dr. House, and certainly more present with Congeni than with the state agency reviewers - all of whose opinions were given "great weight," and all of whose opinions found less than marked limitations in the domain of interacting and relating to others.[41]

---

[39] *Pater v. Comm'r of Soc. Sec.*, 2016 WL 3477220 (N.D. Ohio June 27, 2016).

[40] *Id.* at 18.

[41] *Id.*

In that regard, I note, as does the claimant, that the ALJ was not specific at all as to why Congeni's opinion was not given greater weight as to this domain.[42] The highly general remark that Congeni's opinion was not given significant weight "for similar reasons" to why Dr. Eppright's opinion was given little weight, makes it difficult to perform meaningful judicial review of the ALJ's decision regarding the assignment of weight to Congeni's opinion. This difficulty is especially apparent because at least one of the reasons given by the ALJ for the weight given to Dr. Eppright's opinion is that his opinion "is in contrast" to the one from therapist Congeni - a contrast that is not specified and cannot be true as to the domain of interacting with others, where the two opinions are identical.

Finally, Dr. House's opinion, which, as noted, was the only one directly cited by the ALJ in the section of the opinion discussing the relevant domain, did not directly offer an opinion as to whether T.H.'s impairments in the domain of interacting with others were of any specific level of severity. Instead, Dr. House proceeded in a narrative format, as discussed above, citing various points that could be viewed as supporting or detracting from any particular level of severity in this impairment. The point is that Dr. House offered no specific opinion as to any level of severity. For that level of specificity, the only sources are the state agency reviewers and Congeni.

Based on the above facts, I find that the ALJ has not shown sufficient good reasons for the weight given to the opinion of therapist Congeni, for the interpretation given to the

---

[42] ECF # 19 at 15.

narrative findings of Dr. House, nor for the discrepancy of weight between Congeni's opinion and those of the state agency reviewers.

## Conclusion

For the foregoing reasons, I find that substantial evidence does not support the decision of the Commissioner to deny benefits to Clarissa Hasan, on behalf of T.H. Thus, the matter is ordered remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 29, 2018                                    s/ William H. Baughman, Jr.
                                                                                  United States Magistrate Judge